**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Hoi Man Mak, Gui Xiong Liang, Enrong Liang, Xian Wei, Shao Hui Zhang, and Wei Chen, individually and on behalf of all other employees similarly situated,<br><br>                                    Plaintiffs,<br><br>                          - against -<br><br>Ticketech International Ltd, Joseph Kasman, Isaac Seychett, Diego Cuenca, Nicholas Gaudio, Mauricio Cotto, Giselle Seychett, and Enrique Wauters<br><br>                                    Defendants | Case No. 1:19-cv-1350<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT** |

Plaintiff Hoi Man Mak, Gui Xiong Liang, Enrong Liang, Xian Wei, Shao Hui Zhang and Wei Chen (collectively "Plaintiffs"), individually on their own behalf and on behalf of all others similarly situated, by and through their undersigned attorneys, Hang & Associates, PLLC, hereby file this complaint against the Defendants Ticketech International Ltd, Joseph Kasman, Isaac Seychett, Diego Cuenca, Nicholas Gaudio, Mauricio Cotto, Giselle Seychett, and Enrique Wauters (collectively "Defendants"), allege and show the Court the following:

## INTRODUCTION

1.      This is an action brought by Plaintiffs their own behalf and on behalf of similarly situated employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law (the "NYLL"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of

failing to pay their employees, including Plaintiffs, the overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid overtime compensation, (2) liquidated damages, (3) the reimbursement of the "tools-of-trade" expenses; (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

4.      Plaintiffs further allege pursuant to New York Labor Law § 650 et seq. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") and New York Common law that they are entitled to recover from the Defendants: (1) unpaid overtime compensation, (2) unpaid "Spread of Hours" premium, (3) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL, (4) liquidated damages equal to the sum of unpaid "Spread of Hours" premium, and unpaid overtime compensation  pursuant to the NY Wage Theft Prevention Act, (5) prejudgment and post-judgment interest; and (6) attorney's fees and costs.

## JURISDICTION AND VENUE

5.       This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.      Plaintiff Gui Xiong Liang is resident of Richmond County, New York.

8.      From in or around December 2009 to present, Plaintiff Gui Xiong Liang was employed as a maintenance worker in Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101. Plaintiff Gui Xiong Liang daily duties include providing on-site repair and maintenance to the computer system and equipment of Defendants' clients.

9.      Plaintiff Enrong Liang is a resident of Queens County, New York.

10.     From in or around January 2013 to present, Plaintiff Enrong Liang was employed as a maintenance worker in Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101. Plaintiff Enrong Liang's daily duties include providing on-site repair and maintenance to the computer system and equipment of Defendants' clients.

11.     Plaintiff Xian Wei ("Wei") is a resident of Kings County, New York.

12.     From in or around January 2014 to present, Plaintiff Xian Wei was employed as a maintenance worker in Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101. Plaintiff Wei's daily duties include providing on-site repair and maintenance to the computer system and equipment of Defendants' clients.

13.     Plaintiff Shao Hui Zhang ("Zhang") is a resident of Nassau County, New York.

14.     From in or around 1994 to present, Plaintiff Zhang was employed as a maintenance worker at Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101. Plaintiff Zhang's daily duties include providing on-site repair and maintenance to the computer system and equipment of Defendants' clients.

15.     Plaintiff Hoi Man Mak ("Mak") is a resident of Kings County, New York.

16.     From in or around April 15, 2015 to present, Plaintiff Hoi Man Mak was employed as a maintenance worker in Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101. Plaintiff Mak's daily duties include providing on-site repair and maintenance to the computer system and equipment of Defendants' clients.

17.     Plaintiff Wei Chen (hereinafter "Chen") is a resident of Kings County, New York.

18.     From in or around January 1, 2014 to on or around February 15, 2017, Plaintiff Chen was employed as a maintenance worker in Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101. Plaintiff Chen's daily duties include providing on-site repair and maintenance to the computer system and equipment of Defendants' clients.

## DEFENDANTS

### Corporate Defendant

19.     Upon information and belief, Corporate Defendant Ticketech International Ltd. "Ticketech") is a domestic business corporation organization and existing under the laws of the State of New York and maintains its principal place of business at 27-04 41st Ave., Long Island City, NY 11101.

20.     Upon information and belief, at all times relevant hereto Ticketech is a business or enterprise engaged in interstate commerce employing more than ten (10) employees and earning gross annual sales over Five Hundred Thousand Dollars ($500,000).

21.     Upon information and belief, at all relevant times hereto, Ticketech has been and continues to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce", within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203.

22.     Ticketech constitutes an enterprise within the meaning of the FLSA, 29 U.S.C § 203(r).

23.    Ticketech has been Plaintiffs' employer within the meaning of the New York State Labor Law ("NYLL") § 2, 190, and 651.

***Individual Defendants***

24.    Upon information and belief, Defendant Joseph Kasman is the owner, officer, director and/or managing agent of Ticketech located at 27-04 41st Ave., Long Island City, NY 11101 and participated in the day-to-day operations of Ticketech and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ticketech.

25.    Upon information and belief, Defendant Joseph Kasman owns the stock of Ticketech and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

26.    Upon information and belief, Defendant Isaac Seychett is the owner, officer, director and/or managing agent of Ticketech located at 27-04 41st Ave., Long Island City, NY 11101 and participated in the day-to-day operations of Ticketech and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ticketech.

27.    Upon information and belief, Defendant Isaac Seychett owns the stock of Ticketech and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

28.    Upon information and belief, Defendant Giselle Seychett is the owner, officer, director and/or managing agent of Ticketech located at 27-04 41st Ave., Long Island City, NY

11101 and participated in the day-to-day operations of Ticketech and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ticketech.

29.    Upon information and belief, Defendant Giselle Seychett owns the stock of Ticketech and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

30.    Upon information and belief, Defendant Diego Cuenca is the owner, officer, director and/or managing agent of Ticketech located at 27-04 41st Ave., Long Island City, NY 11101 and participated in the day-to-day operations of Ticketech and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ticketech.

31.    Upon information and belief, Defendant Diego Cuenca owns the stock of Ticketech and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

32.    Upon information and belief, Defendant Nicholas Gaudio is the owner, officer, director and/or managing agent of Ticketech located at 27-04 41st Ave., Long Island City, NY 11101 and participated in the day-to-day operations of Ticketech and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ticketech.

33.     Upon information and belief, Defendant Nicholas Gaudio owns the stock of Ticketech and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

34.     Upon information and belief, Defendant Mauricio Cotto is the owner, officer, director and/or managing agent of Ticketech located at 27-04 41st Ave., Long Island City, NY 11101 and participated in the day-to-day operations of Ticketech and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ticketech.

35.     Upon information and belief, Defendant Mauricio Cotto owns the stock of Ticketech and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

36.     Upon information and belief, Defendant Enrique Wauters is the owner, officer, director and/or managing agent of Ticketech located at 27-04 41st Ave., Long Island City, NY 11101 and participated in the day-to-day operations of Ticketech and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ticketech.

37.     Upon information and belief, Defendant Enrique Wauters owns the stock of Ticketech and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

38.     At all times relevant herein Ticketech was and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

39.    At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Ticketech.

40.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime compensation, "spread-of-hour" pays and failed to provide them an accurate wage notice at the time of hiring in violation of the NYLL.

41.    Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

42.    Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants at their restaurant locations for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") (the "Collective Action Members"). Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

43.    Plaintiffs will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment

law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

44.    This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

45.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

46.    Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

c. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

47.      Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

48.      Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## CLASS ACTION ALLEGATIONS

49.      Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt persons employed by Defendants at their company location on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

50.      All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under said F.R.C.P 23.

51.      The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than ten (10) members of the class.

52.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' corporation wide policies and practices, including but not limited to their failure to provide a wage notice at the time of hiring, affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

53.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage and hour employment litigation cases.

54.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. The losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, thus the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter

as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

55.     Upon information and belief, defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

56.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b. Whether Plaintiffs and Class members are entitled to overtime under the New York Labor Law;

c. Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiff and the Rule 23 Class spread-of-hours pay as required by the NYLL;

d. Whether the Defendants provided wage notices at the time of hiring to Plaintiffs and class members as required by the NYLL;

e. At what common rate, or rates subject to common method of calculation were and are the Defendants required to pay the Class members for their work

## STATEMENT OF FACTS

57.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

58.     Defendants knew that the nonpayment of overtime pay, spread of hours, failure to provide the required wage notice at the time of hiring, failure to provide the required wage statement with every payment of wages, and failure to fully reimburse the expenses Plaintiffs incurred on behalf of Defendants would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

*Plaintiff Gui Xiong Liang*

59.     From in or around December 2009 to on or around present, Plaintiff Gui Xiong Liang was employed as a maintenance worker in Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101.

60.     During the employment period, Plaintiff Liang normally worked five days per week. From Monday to Friday, he worked from 7:00 am to around 5:00 pm each day without an uninterrupted break. Occassionally Plaintiff Gui Xiong Liang even worked as late as 7:00 p.m. to 8:00 p.m. if the task was complicated and time-consuming.

61.     The maintenance team members also took turns to work on weekends. If Plaintiff Gui Xiong Liang was on duty, he would worked from 7:00 a.m. to 7:00 p.m.. Therefore, on average Plaintiff Liang worked fifty-eight (58) hours per week.

62.    From December 2009 to January 17, 2014, Plaintiff Gui Xiong Liang was paid at a fixed monthly rate of $3,000 via direct deposit regardless the actual number of hours he actually worked each week.

63.    From January 18, 2014 to present, Plaintiff Gui Xiong Liang was paid at a fixed monthly rate of $3,750 via direct deposit regardless the number of hours he actually worked each week.

64.    Throughout his employment with Defendants, Plaintiff Gui Xiong Liang was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws.

65.    Throughout his employment with Defendants, Plaintiff Gui Xiong Liang was not exempted from the overtime regulations under federal and state laws.

66.    To perform his job duties, Plaintiff Gui Xiong Liang spent on behalf of Defendants about $25 per week on gas, $1,500 per year for the insurance of the vehicle, and $10, 000 in total for car maintenance. At all relevant times, the Defendants had a policy and practice of paying Plaintiff Gui Xiong Liang a stipend of $0.50 for each mile he drove to perform his working duties no matter what and how much expenses Plaintiff Liang actually incurred. Plaintiff Liang was not fully reimbursed for the aforementioned expenses. Plaintiff Gui Xiong Liang drove around 14,000 miles per year on average to perform his working duties.

67.    Plaintiff Gui Xiong Liang was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

68.    Defendants did not provide Plaintiff Liang with a correct wage statement with every wage payment.

***Plaintiff Enrong Liang***

69.    From in or around January 2013 to on or around present, Plaintiff Enrong Liang was employed as a maintenance worker in Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101.

70.    During the employment period, Plaintiff Enrong Liang normally worked five days per week. From Monday to Friday, he worked from 7:00 a.m. to around 5:00 p.m. each day without an uninterrupted break. Occasionally Plaintiff Enrong Liang even worked as late as 7:00 p.m. to 8:00 p.m. if the task was complicated and time-consuming.

71.    The maintenance workers took turns to work on weekends. If Plaintiff Enrong Liang was on duty, he worked from 7:00 a.m. to 7:00 p.m. Therefore, on average Plaintiff Enrong Liang worked fifty-eight (58) hours per week.

72.    From January 2013 to January 2015, Plaintiff Enrong Liang was paid at a fixed monthly rate of $3,000 via direct deposit regardless the number of hours he actually worked each week. Ever since Plaintiff Enrong Liang's employment with Defendants from February 2015 to September 2017, Plaintiff Enrong Liang was paid at a fixed monthly rate of $3,360 via direct deposit regardless the number of hours he actually worked each week. From October 2017 to present, Plaintiff Enrong Liang was paid at a fixed monthly rate of $3,750 via direct deposit regardless the number of hours he actually worked each week.

73.    Throughout his employment with Defendants, Plaintiff Enrong Liang was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws.

74.    Throughout his employment with Defendants, Plaintiff Enrong Liang was not overtime-exempt under federal and state laws.

75.    To perform the job duties, Plaintiff Enrong Liang spent on behalf of Defendants about $45.00 per week on gas, $1,500 per year for the insurance of the vehicle, and $6,000 in total for car maintenance. At all relevant times, the Defendants had a policy and practice of paying a stipend of $0.50 for each mile Plaintiff Enrong Liang drove to perform his working duties. Plaintiff Enrong Liang was not fully reimbursed for all of the aforementioned expenses. Plaintiff Enrong Liang had driven about 8,000 miles on average per year to perform his working duties.

76.    Plaintiff Enrong Liang was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

77.    Defendants did not provide Plaintiff Enrong Liang with a correct wage statement with every wage payment.

***Plaintiff Xian Wei***

78.    From in or around December 2009 to on or around present, Plaintiff Xian Wei was employed as a maintenance worker in Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101.

79.    During the employment period, Plaintiff Xian Wei normally worked five days. From Monday to Friday, he worked from 7:00 a.m. to around 5:00 p.m. each day without an uninterrupted break. Occasionally Plaintiff Wei finished his work even as late as 7:00 p.m. to 8:00 p.m. if the task was complicated and time-consuming.

80.     The maintenance workers took turns to work on weekends. If Plaintiff Wei was on duty, he worked from 7:00 a.m. to 7:00 p.m. Therefore, on average Plaintiff Wei worked fifty-eight (58) hours per week.

81.     From January 2013 to January 2015, Plaintiff Wei was paid at a fixed monthly rate of $3,306 via direct deposit regardless the number of hours he actually worked each week. From February 2015 to October 2017, Plaintiff Wei was paid at a fixed monthly rate of $3,606 via direct deposit regardless the number of hours he actually worked each week. From November 2017 to present, Plaintiff Wei was paid at a fixed monthly rate of $3,846 via direct deposit regardless the number of hours he actually worked each week.

82.     Throughout his employment with Defendants, Plaintiff Wei was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws.

83.     Throughout his employment with Defendants, Plaintiff Wei was not overtime-exempt under federal and state laws.

84.     To perform the job duties, Plaintiff Wei spent on his own expense about $25.00 per week on gas, $2,000 per year for the insurance of the vehicle, and $4,000 in total for car maintenance. At all relevant times, the Defendants had a policy and practice of paying Plaintiff Wei a stipend of $0.50 for each mile he drove for Defendants. Plaintiff Wei was not fully reimbursed for all of the aforementioned expenses. Plaintiff Wei drove around 15,000 miles per year in average during the employment period.

85.     Plaintiff Xian Wei was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

86.    Defendants did not provide Plaintiff Wei with a correct wage statement with every wage payment.

**Plaintiff Shao Hui Zhang**

87.    From in or around December 1994 to on or around present, Plaintiff Shao Hui Zhang was employed as a maintenance worker in Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101.

88.    From January 1, 2013 to October 2018, Plaintiff Zhang normally worked five days per week. From Monday to Friday, he worked from 9:00 am to around 7:00 pm each day without an uninterrupted break. Occasionally Plaintiff Zhang worked even as late as 8:00 p.m. to 9:00 p.m. if the task was complicated and time-consuming.

89.    The maintenance workers took turns to work on weekends. If Plaintiff Zhang was on duty, he worked from 7:00 a.m. to 7:00 p.m. Therefore, on average Plaintiff Wei worked fifty-eight (58) hours per week.

90.    From November 2018 to present, Plaintiff Zhang normally worked five days per week. From Monday to Friday, he worked from 10:00 a.m. to around 8:00 p.m. each day without an uninterrupted break. Occasionally Plaintiff Zhang worked even as late as 9:00 p.m. to 10:00 p.m. if the task was complicated and time-consuming.

91.    The maintenance workers took turns to work on weekends. If Plaintiff Zhang was on duty, he worked from 7:00 a.m. to 7:00 p.m. Therefore, on average Plaintiff Zhang worked fifty-eight (58) hours per week throughout his employment with Defendants.

92.    From January 2013 to December 2016, Plaintiff Zhang was paid at a fixed monthly rate of $5,208 via direct deposit regardless the number of hours he actually worked each week.

From January 2017 to present, Plaintiff Zhang was paid at a fixed monthly rate of $5,374 via direct deposit regardless the number of hours he actually worked each week.

93.    Throughout his employment with Defendants, Plaintiff Zhang was not properly compensated for all hours worked above forty (40) in each workweek according to state and federal laws.

94.    Throughout his employment with Defendants, Plaintiff Zhang was not overtime-exempt under federal and state laws.

95.    To perform the job duties, Plaintiff Zhang spent on behalf of the Defendants about $90.00 per week on gasoline, $2,500 per year for the insurance of the vehicle, and $2,100 in total for car maintenance. At all relevant times, the Defendants had a policy and practice of paying Plaintiff a stipend of $0.50 for each mile he drove to perform working duties. However, Plaintiff Zhang was not fully reimbursed for all of the aforementioned expenses. Plaintiff Zhang drove about 18,000 miles per year on average during the employment period.

96.    Plaintiff Zhang was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

97.    Defendants did not provide Plaintiff Zhang with a correct wage statement with every wage payment.

***Plaintiff Hoi Man Mak***

98.    From in or around April 2015 to on or around present, Plaintiff Hoi Man Mak was employed as a maintenance worker in Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101.

99.    From April 2015 to present, Plaintiff Mak normally worked five days per week. From Monday to Friday, he worked from 10:00 am to around 8:00 pm each day without an uninterrupted break. Occasionally Plaintiff Mak worked even as late as 9:00 p.m. to 10:00 p.m. if the task was complicated and time-consuming. The maintenance workers took turns to work on weekends. If Plaintiff Mak was on duty, he worked from 7:00 a.m. to 7:00 p.m. Therefore, on average Plaintiff Mak worked fifty-eight (58) hours per week.

100.    From April 2015 to August 2016, Plaintiff Mak was paid at a fixed monthly rate of $3,000 via direct deposit regardless of the number of hours he actually worked each week. From September 2016 to August 2018, Plaintiff Mak was paid at a fixed monthly rate of $ 3,250 via direct deposit regardless of the number of hours he actually worked each week. From September 2018 to present, Plaintiff Mak was paid at a fixed rate of $3,500 per month via direct deposit regardless of the number of hours he actually worked each week.

101.    Throughout his employment with Defendants, Plaintiff Mak was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws.

102.    Throughout his employment with Defendants, Plaintiff Mak was not overtime-exempt under federal and state laws.

103.    To perform the job duties, Plaintiff Mak spent on his own expense about $35.00 per week on gas, $2,400 per year for the insurance of the vehicle from 2015 to 2018 and $1,600 per year for insurance of the vehicle recently, and $3,600 in total for car maintenance. At all relevant times, the Defendants had a policy and practice of paying Plaintiff Mak a stipend of $0.50 for each mile he drove to perform working duties. Plaintiff Mak was not fully reimbursed for all of the aforementioned expenses. Plaintiff Mak had driven about 18,000 miles per year on average during the employment period.

104.    Plaintiff Mak was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

105.    Defendants did not provide Plaintiff Mak with a correct wage statement with every wage payment.

**Plaintiff Wei Chen**

106.    From in or around January 1, 2014 to on or around February 15, 2017, Plaintiff Wei Chen was employed as a maintenance worker in Defendants' company located at 27-04 41st Ave., Long Island City, NY 11101.

107.    From January 1, 2014 to March 31, 2014, Plaintiff Wei Chen normally worked five days per week. From Monday to Friday, he worked from 7:00 am to around 5:00 pm each day without an uninterrupted break. Occasionally Plaintiff Wei Chen worked even as late as 7:00 p.m. to 8:00 p.m. if the task was complicated and time-consuming.

108.    From April 1, 2014 to February 15, 2017, Plaintiff Chen normally worked five days per week. From Monday to Friday, he worked from 9:00 a.m. to around 7:00 p.m. each day without an uninterrupted break. Occasionally Plaintiff Chen worked even as late as 9:00 p.m. to 10:00 p.m. The maintenance workers took turns to work on weekends. If Plaintiff Chen was on duty, he worked from 7:00 am to 7:00 pm. Therefore, on average Plaintiff Chen worked fifty-eight (58) hours per week.

109.    From January 1, 2014 to December 31, 2014, Plaintiff Chen was paid at a fixed monthly rate of $3,000 via direct deposit regardless of the number of hours he actually worked each week. From January 2015 to February 15, 2017, Plaintiff Wei was paid at a fixed monthly

rate of $3,250 per month via direct deposit regardless of the number of hours he actually worked each week.

110.    Throughout his employment with Defendants, Plaintiff Chen was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws.

111.    Throughout his employment with Defendants, Plaintiff Chen was not overtime-exempt under federal and state laws.

112.    To perform the job duties, Plaintiff Chen spent on his own expense about $30.00 per week on gasoline, $2,000 per year for the insurance of the vehicle during 2014 to 2017, and $10,000 in total for car maintenance. At all relevant times, the Defendants had a policy and practice of paying Plaintiff $0.50 for each mile he drove to perform working duties. Plaintiff Chen Wei was not fully reimbursed for all of the aforementioned expenses. Plaintiff Chen drove about 10,000 to 12, 000 miles per year in average during the entire employment period.

113.    Plaintiff Chen was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

114.    Defendants did not provide Plaintiff Chen with a correct wage statement with every wage payment.

**STATEMENT OF CLAIMS**

**COUNT I**
**[Violations of the Fair Labor Standards Act—Overtime Wage**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

115.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

116.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

117.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages.  29 U.S.C. §216(b).

118.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime premiums violated the FLSA.

119.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

120.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

121.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

122.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they

knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT II
### [Violation of New York Labor Law—Overtime Pay
### Brought on behalf of Plaintiffs and the Rule 23 Class]

123.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

124.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

125.    Defendants' failure to pay Plaintiffs their overtime premiums violated the NYLL.

126.    Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT III
### [Violation of New York Labor Law—Spread of Hours
### Brought on behalf of Plaintiffs and the Rule 23 Class]

127.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

128.    The "spread of hours" is the number of hours from the time that an employee started working on a particular day until the time that he or she stopped working for the day. 12 NYCRR § 137-1.7, 12 NYCRR 146-1.6 (effective 1/1/2011, formerly 12 NYCRR § 137-1.7), New York State Department of Labor Regulations § 137-1.7 provides that an employer is required to pay an employee an extra hour of pay at the full minimum wage, without allowances, for each day in which the employee's spread of hours exceeds ten. This "spread of hours" regulation is applicable even if there is a split shift.

129.    Throughout their employment with Defendants, Plaintiffs routinely worked a "spread of hours" of over ten hours per day.

130.    All Plaintiffs regularly worked for shifts over ten hours per day but were not paid an extra hour of pay at full minimum wage rate for any of such days.

131.    Despite the fact that Plaintiffs routinely worked a "spread-of-hours" greater than ten hours per day during certain employment period with Defendants, Defendants did not pay Plaintiffs any additional compensation as required by the regulations.

132.    Defendants' failure to pay spread of hours compensation was willful and intentional.

## COUNT IV
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement Brought on Behalf of Plaintiffs]

133.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

134.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

135.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's

primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

136.    Defendants not only did not provide notice to each employee at Time of Hire but also failed to provide notice to Plaintiffs thereafter.

137.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT V
### [Violation of New York Labor Law—New York Pay Stub Requirement
### Brought on Behalf of Plaintiffs]

138.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

139.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

140.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiffs and did not provide the paystub on or after each Plaintiffs' payday.

141.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

## COUNT VI
### [Violation of the Fair Labor Standards Act —Failure Reimburse for Expenses relating to
### Tools of the Trade]

142.    Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members repeat and re-allege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

143.    At all relevant times, the Defendants had a policy and practice of refusing to reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs in order to perform their job duties as nail technicians. Such tools of the trade include but are not limited to, gasoline, oil change, car maintenance and insurance.

144.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs when Defendants knew or should have known such was due.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and the Rule 23 Plaintiffs, respectfully request that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)     Certification of this case as Rule 23 Class Action pursuant to NYLL and the Civil Practice Law and Rules.

d)     Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

e)     A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

f)     An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

g)     Award Plaintiffs unpaid overtime wages due under the FLSA and the New York Labor Law;

h)     An award of damages for Defendants' failure to reimburse Plaintiff's expenses for tools of trade under the FLSA;

i)     Award Plaintiffs "spread of hours" pay in the amount of one time of the then-applicable minimum wage rate for each day Plaintiffs worked ten or more hours in a workday pursuant to New York Labor Law and its regulations;

j)     An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime wages, and "spread of hours" premium pursuant to the Fair Labor Standards Act and New York Labor Law;

k)    An award of costs and expenses of this action together with reasonable attorneys' and

expert fees pursuant to 29 U.S.C. §216(b) and NYLL;

l)    The cost and disbursements of this action;

m)    An award of prejudgment and post-judgment fees; and

n)    Such other and further legal and equitable relief as this Court deems necessary, just,

and proper.


Dated:  Flushing, New York, March 7, 2019          HANG & ASSOCIATES, PLLC.

                                                   */S RUI MA*
                                                   Rui Ma, Esq.
                                                   136-20 38th Ave., Suite 10G
                                                   Flushing, New York 11354
                                                   Tel: 718-353-8588
                                                   Fax: 718-353-6288
                                                   rma@hanglaw.com
                                                   *Attorneys for Plaintiffs*

# Exhibit 1

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Ticketech International Ltd., Issac
Seychett and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I
agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff
in this case.

ENRONG LIANG
_____
Full Legal Name (Print)


_____
Signature

02 | 16 | 19
_____
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Ticketech International Ltd., Issac Seychett and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_Gui Xiong Liang_
Full Legal Name (Print)

Signature

_2/16/19._
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Ticketech International Ltd., Issac Seychett and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_XIAN WEI_
Full Legal Name (Print)


Signature

_02/16/2019_
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Ticketech International Ltd., Issac Seychett and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*ZHANG SHAO HUI*
Full Legal Name (Print)

Signature

*2/16/19*
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Ticketech International Ltd., Issac Seychett and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*Hoi Man Mak*
Full Legal Name (Print)

*Hoi Man Mak*
Signature

*2/16/19*
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Ticketech International Ltd., Issac Seychett and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

WEI    CHEN
_____
Full Legal Name (Print)

_____
Signature

3 – 4 – 2019
_____
Date